Sanders, Janet L., J.
Plaintiffs United Salvage Corporation, doing business as Framingham Salvage Company (Framingham Salvage), instituted this action against the defendant Richard Kradin seeking enforcement of noncompetition and nonsolicitation agreements negotiated when Kradin sold his salvage business to plaintiff. A hearing on plaintiffs request for a preliminary injunction was held on November 3, 2016. Ruling from the bench, this Court allowed that Motion and entered the Order proposed by plaintiff. Although this Court did articulate the reasons for its ruling in open court, this memorandum is issued by way of further explanation.
Framingham Salvage is in the scrap metal and metal recycling business. In January 2015, it purchased all the assets of a competitor, Industrial Metal Recycling, Inc. (IMR), owned by the defendant Kradin. In connection with that transaction, the parties executed a series of agreements, all of which are attached to the Verified Complaint. Kradin was represented by counsel in negotiating these agreements, which reference each other and therefore are construed as a whole.
Pursuant to an Asset Purchase Agreement, Fra-mingham Salvage obtained all the assets of IMR, including its goodwill, in return for assuming liabilities totaling over $500,000 and forgiving IMR’s own $152,607 debt to plaintiff. Pursuant to an Employment Agreement, Framingham Salvage agreed to employ Kradin for a term of 60 months at a $250,000 annual salary. The parties executed a third agreement, entitled Proprietary Information and Inventions Agreement (the PII Agreement), which contains the restrictive covenants at issue in this case. Those covenants prohibit Kradin from competing with Framingham Salvage or soliciting the business of any customer with whom he has had personal contact or learned about during the course of his employment with the plaintiff. The covenants applied not only during the period of Kradin’s employment but continue for a period of five years from the date of the termination of his employment, regardless of the reason for the termination. Section 4(i) of the PII Agreement further stated:
Each of my obligations to be performed under this Agreement shall be interpreted independent of any other provisions of this Agreement, the Asset Purchase Agreement or my Employment Agreement *8 and any other obligation the Company [Framing-ham Salvage] may have toward me. The existence of any claims by me against the Company, whether based on this Agreement or otherwise, shall not be a defense to the enforcement by the Company of any of my obligations under this Agreement.
On July 25, 2016, Framingham Salvage terminated Kradin, alleging that he had played golf on numerous work days without the company’s knowledge or approval, submitted false sales contact reports and generally misrepresented to the company orally and in writing that he was working when in fact he was not. Taking the position that this constituted “cause” under the Employment Agreement, Framingham Salvage ceased paying Kradin’s salary and, at the same time, reminded him of his obligations under the PII Agreement. It is undisputed that Kradin almost immediately began to contact Framingham Salvage Customers and solicited them to do business with him instead.
In opposing the plaintiffs motion, the defendant argues that Framingham Salvage has materially breached its own obligations by failing to pay some of the debts it had assumed, then drove him out of the company on “trumped up charges.” Although the evidence is conflicting as to whether Framingham Salvage breached any of its obligations or terminated Kradin without cause, the weight of that evidence at this point favors the plaintiff, not the defendant. More important, the defendant’s argument as to the significance of this evidence ignores Section 4(i) of the PII Agreement, which makes it clear that the noncompete and nonsolicitation covenants are independent obligations and that any claim that Kradin may have against Framingham Salvage is not a defense to their enforcement. Even assuming that Kradin was terminated without cause, the restrictive covenants themselves expressly state that they apply regardless of the reason for any termination. By the terms of the Agreements that he signed, this defense does not excuse him from complying with the restrictive covenants.
Kradin next argues that issuance of the injunction would deprive him of the ability to earn a livelihood and that the restrictive covenants are unreasonable and in violation of public policy. This Court disagrees. The covenants are tailored to protect Framingham Salvage’s legitimate business interests — namely, the protection of its good will. Their geographic reach is limited to areas within Framingham Salvage’s terri-toiy. The five-year length is also not unreasonable, particularly in light of the fact that it was negotiated as part of a sale of a business. See, Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 496 (1986) (upholding five-year restrictive covenant arising out of the sale of a business, court explained why a covenant in that context must be enforced more liberally). Clearly, the covenants here at issue were supported by ample consideration, since Kradin was able to get out from under $650,00 in debt and also get a high level position in Framingham Salvage at a generous salary. As to the harm Kradin may suffer if it turns out the charges to terminate him were indeed “trumped up,” then he can sue Framingham Salvage for his unpaid salary. In other words, he has an adequate remedy at law.
For these and other reasons articulated by plaintiffs counsel and by this Court at the motion hearing, the Motion for Preliminary Injunction was ALLOWED.